UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATISHA FANTOZZI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 11 C 392 |
| WINSTON & STRAWN LLP, | ) |
| | ) Judge John W. Darrah |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's, Winston & Strawn's ("Winston"), Motion to Dismiss Plaintiff Latisha Fantozzi's retaliation and harassment/hostile-work-environment claims from her Amended Complaint.

### BACKGROUND

The following facts are drawn from Fantozzi's Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

*EEOC Charge*

Fantozzi is an African-American female. (Am. Compl. ("Compl.") ¶ 6.) Fantozzi worked as a paralegal for Winston from April 17, 2000, until December 4, 2008, when her employment was terminated because she allegedly recorded her time incorrectly. (*Id.*

¶¶ 14-15, 31.) Following her termination, Fantozzi completed an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire. (Compl., Ex. B.) For the question, "What is the reason (basis) for your claim of employment discrimination," Fantozzi checked the boxes corresponding to "Race," "Retaliation," and "Pregnancy." (*Id.*) In the "Other reasons" category, Fantozzi wrote: "I have a life long illness called sarcoidosis." (*Id.*) To her Intake Questionnaire, Fantozzi attached a 19-page, single-spaced, typewritten narrative in response to the question of "What reason(s) were given to you for the acts you consider discriminatory? By whom? Their Job Title?" In this narrative, Fantozzi generally sets forth a history of her employment with Winston, relationship with her supervisor, and discrimination based on her race, being pregnant, and having sarcoidosis. (*Id.*)

Fantozzi submitted the Intake Questionnaire to the EEOC on December 9, 2008. (*Id.*) On January 12, 2009, the EEOC sent Fantozzi the Completed Charge of Discrimination ("Charge"). (*Id.* ¶ 29, Ex. C.) Beneath the title "Discrimination Based On," the EEOC employee who prepared the Charge for Fantozzi checked the box labeled "Race" but left all other boxes, including the retaliation box, blank. (*Id.*) Fantozzi signed the Charge on January 12, 2009, stating the following narrative under penalty of perjury describing her claim:

> On December 2, 2008, I was discharged for alleged inaccurate time spent on a case. A White employee who was accused of poor performance and inaccurate time spent on a case was placed on probation. I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*, Ex. C.) Fantozzi signed the EEOC Charge on January 12, 2009. In March 2009, the EEOC directed Fantozzi to contact the agency if she wished to file an additional charge. (*See id.*, Ex. D.) Fantozzi alleges that beginning in February 2009, she frequently left voicemails with the EEOC representative "to discuss the race discrimination and retaliation of Defendant." (*Id.* ¶ 40.)

> On May 4, 2010, Fantozzi sent the EEOC a letter, stating:
>
> I left you voicemails to inquire about the status of my case and if you need additional information. Also, when I originally provided information regarding the lawsuit, I also provided information regarding retaliation from the paralegal manager (Hilda Valdiva) as well. As you mentioned in your last letter to me dated March 14, 2009, I could contact to[sic] you to file an additional charge. If it's not too late, I would like to file the retaliation part to this case. Please let me know at your earliest convenience how to proceed.

(*Id.*, Ex. D.) On May 19, 2010, Fantozzi sent another letter to the EEOC, stating, "Per our conversation on May 11, 2010, I left you a message regarding the procedure for filing retaliation to the case as well as the names of the individuals Winston & Strawn provided according to their response." (*Id.*, Ex. E.) On July 23, 2010, Fantozzi sent another letter to the EEOC, to which she attached an affidavit written by a former employee. (*Id.*, Ex. F.) Fantozzi explained in the letter that the employee "can attest to the racial discrimination, black team assignments, late promotions and unprofessional treatment from Hilda Valdiva." (*Id.*) On October 22, 2010, Fantozzi received a right-to-sue notice from the EEOC and filed her Complaint in this Court on January 19, 2011.

*Fantozzi's Complaint*

Fantozzi's Complaint claims that she was discriminated against and harassed by Winston based on her race. (*Id.* ¶ 9.) Fantozzi alleges that the reason given for her

3

termination was pretextual and that she was actually terminated because of her race and in retaliation for having complained internally about her immediate supervisor. (*Id.* ¶¶ 9, 26-32.) Fantozzi further alleges that, at unspecified times during her employment, her immediate supervisor made harassing comments to her. First, when Fantozzi was assigned to the same office as the supervisor, the supervisor stated, "I hope you don't listen to rap music." (*Id.* at ¶ 17.) Second, when her supervisor returned from vacation, Fantozzi said to her supervisor she had a nice tan, and her supervisor responded, "Never like you." (*Id.* at ¶ 18.) Third, her supervisor comprised an all-African-American paralegal team when making team assignments. (*Id.* at ¶ 19.) Fourth, the supervisor asked Fantozzi for "honest" feedback regarding copy-center employees. (*Id.* ¶ 20.) Fantozzi responded that "just because they are black does not mean I won't give you honest feedback," to which her supervisor replied, "I know how you guys try to protect each other." (*Id.*) Fifth, Fantozzi's supervisor asked her for help in telling the difference between African-American employees because "she would know." (*Id.* ¶ 21.) When Fantozzi asked why, the supervisor responded, because they are both "very dark." (*Id.*) Last, the supervisor told Fantozzi that "maybe she would be more willing to attend paralegal functions if she reserved places where they serve chicken." (*Id.* ¶ 22.)

Fantozzi complained about the discriminatory conduct to her supervisor (the same supervisor referred to above), but no action was taken. (*Id.* ¶ 26.) In November 2008, Fantozzi reported the conduct of her supervisor to Winston's Human Resources ("HR") department. (*Id.* ¶ 27.) During the meeting, the HR employee told Fantozzi she was being investigated for fraudulent billing and that her complaints would be addressed after

the investigation. (*Id.*) After this meeting, Fantozzi alleges that her billing came under scrutiny. (*Id.* ¶ 28.) Eventually, Fantozzi complained to her supervisor's supervisor regarding the discriminatory conduct. (*Id.* ¶ 29.) Fantozzi's employment was terminated shortly after she made this complaint. (*Id.* ¶ 30.) Fantozzi alleges that she was terminated under the pretext of fraudulent billing but was actually fired because of her race and because she complained to her immediate supervisor about her discriminatory conduct. (*Id.* ¶¶ 31, 33.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

## ANALYSIS

"Generally, a Title VII plaintiff may bring only those claims that were included in her EEOC charge . . . or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996).

Winston argues that Fantozzi's retaliation and harassment claims fall outside the scope of her EEOC Charge. Therefore, because she failed to exhaust her administrative remedies with respect to these claims, they should be dismissed. (Mot. at 5.) Fantozzi argues that her Intake Questionnaire and subsequent letters to the EEOC should be incorporated as part of her EEOC Charge based on "equitable circumstances" — which are that Fantozzi proceeded *pro se*. (Resp. at 5.) The issue of whether Fantozzi may rely upon allegations in her Intake Questionnaire to prove that she exhausted the administrative remedies for her retaliation and harassment claims is addressed first.

There is Seventh Circuit authority as to whether an Intake Questionnaire may be considered to determine the scope of an EEOC Charge. In *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497 (7th Cir. 1994) (*Cheek*), the Seventh Circuit held: "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Id.* at 502; *see also*

*Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) (*Vela*). Then in *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699 (7th Cir. 1999) (*Novitstky*), the court set forth this bright-line test: "[I]t is the charge, not the intake questionnaire, that is relevant in assessing the scope of the claim." *Id.* at 702. The frequently cited concurring opinion states:

> Contrary to the opinion's implications, we do not now decide whether an illiterate person or *pro se* person who signs a charge prepared by the EEOC, which leaves out critical information provided by the claimant to the EEOC in the intake questionnaire, would be similarly bound by the charge. That issue is not before us and is in fact substantially different from the one we decide today. A number of courts have recognized that equitable considerations may require a court to look outside the formal charge where the employee has done all that she can to present the claim to the EEOC, particularly where the failure to include the allegations results from EEOC negligence or misinformation.

*Id.* at 703 (Rovner, J., concurring). Most recently, under circumstances similar to those presented here, in *Swearnigen-El v. Cook County Sheriff's Dept.*, 602 F.3d 852 (7th Cir. 2010) (*Swearnigen-El*), the court held that plaintiff's EEOC charge did not support the claim of retaliation he later added to his complaint. In doing so, the court noted that the plaintiff "did not check the box for retaliation or otherwise indicate that action had been taken against him for reasons other than his race and gender." *Id.* at 864-65.

Here, Fantozzi argues that equitable circumstances — specifically, that she was without counsel — compels the Court to consider the allegations in her Intake Questionnaire. Even though there is authority holding that equitable circumstances could allow the consideration of documents outside the EEOC Charge, Fantozzi has not made such a showing. Fantozzi's *pro se* status is only one of several factors that may be examined to determine whether equitable circumstances exist. *See Brindley v. Target*

7

*Corp.*, No. 10-cv-6933, 2011 WL 182046 at n.5 (N.D. Ill. Jan. 21, 2011). Other relevant factors include: whether the materials were signed under oath, whether the questionnaire was filed contemporaneously with the Charge, and whether the EEOC engaged in inequitable conduct. *See id.* None of those factors are present here.

The only case Fantozzi cites in support of her *pro se* equitable-circumstance argument is distinguishable. In that case, *Jackson v. Local 705, International Brotherhood of Teamsters, AFL-CIO, et al.*, No. 95-cv-7510, 2002 WL 460841, at *2 (N.D. Ill. Mar. 26, 2002) (*Jackson*), the court held that equitable circumstances *in addition* to plaintiff's *pro se* status justified looking outside the charge. Specifically, before the plaintiff filed his charge, the EEOC representative affirmatively informed him that it would investigate the additional claims the plaintiff described but were not mentioned in the charge. *Id.* Because Jackson contended he signed the charge in reliance on the EEOC's misrepresentation, the court concluded that equitable circumstances allowed him to include them in his lawsuit. *Id.* Thus in *Jackson*, by contrast to this case, "the failure to include the allegations result[ed] from EEOC negligence or misinformation." *Novitsky*, 196 F.3d 699, 702 (7th Cir. 1999) (Rovner, J, concurring).

Moreover, consideration of materials outside the EEOC charge in determining the scope of the claims must be balanced against an important consideration: whether the employer has notice of the additional claims. *See Bilal v. Rotec Indus., Inc.*, No. 06-2143, 2009 WL 1687687, at *2 (7th Cir. 2009) (noting the importance of putting an employer on notice of the charges against it); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). As Winston points out (Resp. at 4), it did not receive

8

notice of the additional claims of retaliation and hostile work environment now raised in the Amended Complaint. Therefore, Fantozzi's Charge, such as her Intake Questionnaire and subsequent letters, may not be considered part of the EEOC Charge.

Consequently, Fantozzi's claims for retaliation and harassment only survive if she can demonstrate that they are reasonably related to her EEOC Charge. For a plaintiff to proceed on a claim not raised in an EEOC charge, "there must be 'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" *Vela*, 218 F.3d at 664 (quoting *Cheek*, 31 F.3d at 500). Claims are reasonably related if there is a factual relationship between them. *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (*Ezell*). At a minimum, this means that the EEOC charge and the complaint must describe the same conduct and implicate the same individuals. *Id.*

Here, Fantozzi's narrative in her EEOC Charge specifically states: "I was discharged for alleged inaccurate time spent on a case. A White employee who was accused of poor performance and inaccurate time spent on a case was placed on probation." (Compl., Ex. C.) There is nothing ambiguous about Fantozzi's comments. There is no mention of any racial comments or any complaints she made regarding discrimination to any supervisor. Thus, it cannot be said that Fantozzi's instant claims of harassment or retaliation could reasonably be expected to grow out of an EEOC investigation of her Charge.

The cases cited by Fantozzi in support of her argument are inapposite. In *Ezell*, the court did not reach the question of whether plaintiff's hostile-environment claim was reasonably related to his disparate-treatment claim stated in his charge. *Id.* ("But we need not conclusively answer this question because, in any event, the conduct that Ezell describes is not severe or pervasive enough to qualify as a hostile environment."). In *Muhammad v. Chicago Park Dist.*, No. 06-cv-308, 2007 WL 1030431, at *4 (N.D. Ill. Mar. 30, 2007), the plaintiff alleged a claim of discrimination in his EEOC charge but brought an additional claim for harassment in his complaint. In his charge, the plaintiff alleged "false termination, lying, and discrimination" and mentioned employer's conduct that could form the basis of a harassment claim. *Id.* The court held that "a fair reading of the charge leaves the reader with notice" of plaintiff's additional harassment claim. As discussed above, Fantozzi's statement and Charge to the EEOC do not contain allegations that could remotely support her allegations of retaliation and harassment nor be found to give fair notice to Winston of these claims.

## CONCLUSION

For the reasons set forth above, Winston's Motion to Dismiss Plaintiff's retaliation and harassment claims [14, 15] is granted with prejudice.

Date: August 17, 2011

JOHN W. DARRAH
United States District Court Judge